Kathy McKENNA, Appellee,

v.

Helen V. SOSSO, Ronald F. Croushore, Howard Engelberg, Herman Engelberg, PPR Realty, Inc., Real Estate Educators, Inc., Pennsylvania Preferred Mortgage Company, Inc., Preferred Settlement Services, Inc., Preferred Insurance Agency, Inc., Murray 22 Associates, Inc., and Pennsylvania Preferred Title Insurance Company.

Appeal of Helen V. Sosso and Ronald F. Croushore, Appellants.

Superior Court of Pennsylvania.

Argued Sept. 30, 1999.
Filed Dec. 3, 1999.
Reargument Denied Feb. 11, 2000.

William Pietragallo, II, Pittsburgh, for appellants.

Francis C. Rapp, Jr., Pittsburgh, for PPR Realty, Inc., Real Estate Educators, Inc., Pennsylvania Preferred Mortg. Co., Inc., Preferred Settlement Services, Inc., Preferred Ins. Agency, Inc., Murray Associates, Inc., and Pennsylvania Preferred Title Ins. Co., appellees.

Thomas Farnan, Pittsburgh, for McKenna, appellee.

Before JOHNSON, MUSMANNO and HESTER, JJ.

JOHNSON, J.:

¶ 1 Helen V. Sosso and Ronald F. Croushore appeal the trial court's decree confirming a common law arbitration award and entering judgment in favor of Kathy McKenna. Sosso and Croushore contend that the trial court erred in confirming the judgment because the arbitration panel failed to provide a full and fair hearing of their defenses prior to entering an award and relied on evidence outside the record. We conclude that the arbitration panel provided a full and fair hearing to all parties. Moreover, the record fails to substantiate the irregularities in the arbitration process that Sosso and Croushore assert. Consequently, we affirm the trial court's decree entering judgment on the award in arbitration.

¶ 2 The underlying dispute arises out of an attempt by Kathy McKenna to purchase shares of stock in PPR Realty, Inc. and its affiliated companies (PPR) under a right of first refusal in PPR's shareholder agreement. PPR operates numerous real estate brokerage offices in western Pennsylvania as a franchisee of The Prudential Real Estate Affiliates, Inc. McKenna was one of five shareholders in PPR, holding a stake in the companies that amounted to no more than 10%. Sosso and Croushore were PPR's managing shareholders, controlling 26.3% and 23.3% of PPR Realty, Inc. shares, respectively. In September 1995, PPR's two remaining shareholders, defendants Howard Engelberg and Herman Engelberg, offered to sell their respective stakes in PPR, which together totaled 38.33% of the stock of PPR Realty, Inc., and 37% of the stock in the affiliated companies. McKenna offered to purchase

the stock, and the Engelbergs purported to accept her offer. Subsequently, however, the Engelbergs accepted a second offer from Sosso and Croushore and transferred their holdings to Sosso and Croushore.

¶ 3 In accordance with the parties' shareholder agreement, McKenna elected arbitration before a Commercial Arbitration Tribunal of the American Arbitration Association, contending that the remaining shareholders had acted in violation of her right of first refusal under the shareholders' agreement. The parties appointed as arbitrators Pittsburgh attorneys William M. Wycoff, Edwin L. Klett, and William Caroselli. The arbitrators elected to bifurcate presentation of the issues before them, addressing first whether McKenna possessed a valid right of first refusal and then whether Sosso and Croushore presented ample defenses to McKenna's claim.

¶ 4 The arbitrators convened hearings on November 13, 1997, and February 1, 1998. Following the second day of hearings, the arbitrators permitted briefing by the parties to address issues raised in the parties' closing arguments. McKenna attached to her brief a copy of her offer letter to the Engelbergs, predating the disputed offer by Sosso and Croushore, and a copy of the Engelbergs' letter accepting her offer. The parties differ on whether the letters were admitted during the hearings. McKenna contends that the letters were admitted while Sosso and Croushore contend that they were not. None of the parties compiled a stenographic record.

¶ 5 Ostensibly in reliance upon McKenna's submissions, the arbitrators entered an award on March 3, 1998, recognizing McKenna's right of first refusal and directing specific performance of her purported agreement with the Engelbergs. By letter of April 1, 1998, counsel for Sosso and Croushore and counsel for PPR reminded the arbitrators of the earlier bifurcation and suggested that the arbitrators schedule additional hearings at which to receive evidence of Sosso's and Croushore's defenses. On the same date, Sosso and Croushore and PPR commenced the underlying action in the trial court with a Petition to Vacate Arbitration Award of the American Arbitration Association, Commercial Arbitration Tribunal. Sosso, Croushore, and PPR also issued subpoenas to compel the arbitrators to deposition. Subsequently, the arbitrators agreed to convene additional hearings. The trial court, the Honorable Eugene B. Strassburger, quashed the deposition subpoenas, as well as the defendants' petition to vacate the award, and remanded the matter to the arbitrators for further proceedings. Following additional hearings, at which Sosso and Croushore presented their defenses, the arbitrators entered a new award, again finding for McKenna and directing specific performance. The parties filed cross-petitions with the trial court to confirm and to vacate the award in arbitration. By order of November 12, 1998, Judge Strassburger confirmed the award in an interlocutory order. On February 12, 1999, the court entered a Final Decree incorporating the order of November 12, and, *inter alia*, directing transfer of the disputed stock to McKenna. Sosso and Croushore filed this appeal.

¶ 6 Sosso and Croushore (hereinafter Sosso) raise the following issues for our review:

I. WHETHER THE APPELLANTS WERE DENIED A FULL AND FAIR HEARING IN THE ARBITRATION?

II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO VACATE THE ARBITRATORS' FIRST AWARD AND IN DIRECTING FURTHER ARBITRATION PROCEEDINGS AFTER THE ARBITRATORS HAD ENTERED A FINAL AWARD?

III. WHETHER THE TRIAL COURT ERRED IN CONFIRMING THE ARBITRATION AWARD IN LIGHT OF THE

SUBSTANTIVE AND PROCEDURAL IRREGULARITIES IN THE ARBITRATION PROCESS WHICH DENIED THE APPELLANTS THEIR RIGHT TO A FULL AND FAIR ARBITRATION HEARING?

IV. WHETHER THE TRIAL COURT ERRED IN REDUCING THE ARBITRATION AWARD TO A DECREE OF THE COURT IN LIGHT OF THE SUBSTANTIVE AND PROCEDURAL IRREGULARITIES IN THE ARBITRATION PROCESS WHICH DENIED THE APPELLANTS THEIR RIGHT TO A FULL AND FAIR ARBITRATION HEARING?

V. WHETHER THE TRIAL COURT ERRED IN MODIFYING THE TERMS OF THE ARBITRATION AWARD UPON REDUCING THE AWARD TO A DECREE OF THE COURT?

Brief for Appellant at 6.

¶ 7 Upon review of Sosso's brief to this Court, we note that she seeks *vacatur* of the underlying award. *See* Brief for Appellant at 32. Four of her five stated issues assert that some irregularity occurred in the underlying arbitration proceeding. In order to address those issues, we must review the proceeding to determine whether the irregularities cited by Sosso are sufficient to require judicial intervention.

¶ 8 Judicial review of a common law arbitration proceeding is prescribed by statute, under a provision of the Pennsylvania Judicial Code:

### § 7341. Common law arbitration

The award of an arbitrator in a nonjudicial arbitration ... is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

42 Pa.C.S. § 7341. In accordance with this provision, our scope of review is extremely narrow. "The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to a reversal for a mistake of either." *Prudential Property and Cas. Ins. Co. v. Stein*, 453 Pa.Super. 227, 683 A.2d 683, 685 (1996). Neither we nor the trial court may retry the issues addressed in arbitration or review the tribunal's disposition of the merits of the case. Rather, we must confine our review to whether the appellant was deprived of a hearing or whether "fraud, misconduct, corruption or other irregularity" tainted the award. The appellant bears the burden to establish both the underlying irregularity and the resulting inequity by "clear, precise, and indubitable" evidence. *Chervenak, Keane & Co., Inc. v. Hotel Rittenhouse Assocs., Inc.*, 328 Pa.Super. 357, 477 A.2d 482, 485 (1984). In this context, "irregularity refers to the process employed in reaching the result of the arbitration, not to the result itself." *Id.* A cognizable irregularity may appear in the conduct of either the arbitrators or the parties. *Paugh v. Nationwide Ins. Co.*, 278 Pa.Super. 108, 420 A.2d 452, 458 (1980).

¶ 9 Sosso asserts, in the first two issues, that she was denied a "full and fair hearing." Brief for Appellant at 6. In the context of statutory arbitration, we have determined that "[t]he right to a fair hearing comprises the right to notice and the right to an opportunity to be heard." *Id.* at 457. In support of her first issue, Sosso argues that she was denied a fair hearing because the arbitrators considered copies of letters exchanged between the parties that had not been admitted into evidence. Brief for Appellant at 8. McKenna submitted those letters as attachments to a brief that she submitted to the arbitrators after the first round of hearings. The letters tended to establish that McKenna and the Engelbergs had entered a contract

for the sale of the Engelbergs' stake in PPR. McKenna asserts that the letters had been admitted and that their effect was discussed at length.

¶ 10 We have held that *ex parte* submission of evidence to an arbitration panel after the hearings are closed may impair the fairness of the arbitration process such as to require *vacatur. See Pennsy Supply, Inc. v. Nicholson Co.*, 321 Pa.Super. 475, 468 A.2d 808 (1983) (concluding that defendant had been denied a fair hearing by plaintiff's submission of evidence *ex parte* and vacating arbitration award). We note, however, that the record before us fails to demonstrate that McKenna's submission of the disputed letters was made *ex parte*. Because Sosso bears the burden to demonstrate her assertions by "clear, precise, and indubitable" evidence, she must be prepared to demonstrate as a matter of fact that her characterization of the state of the record is true. *See* Pa.R.A.P. 2119. Nonetheless, Sosso has failed to provide a transcription of the proceedings before the arbitrators, in the absence of which we are unable to discern the accuracy of her assertion. Where, as here, the state of the record is a matter of contention, we cannot credit any party's representation concerning its contents. Because Sosso has failed to demonstrate that McKenna submitted the letters *ex parte*, we conclude that the arbitrators' consideration of the letters did not deny Sosso a fair hearing.

¶ 11 In her second issue, Sosso asserts that she was denied an opportunity to be heard because the arbitrators entered a "final" award following the first round of hearings, after only the first of the bifurcated issues had been presented. Brief for Appellant at 6. Although the tribunal reconvened subsequently to receive defense evidence, Sosso argues its authority was exhausted upon entry of the first award, as a consequence of which its later award was a nullity. Brief for Appellant at 24. We find this argument erroneous and self-serving.

¶ 12 Under similar circumstances, we have held that even where the arbitrators enter an award prematurely, their action does not deprive the parties of a fair hearing so long as the tribunal convenes another hearing and enters a new award upon consideration of all the evidence. *See Paugh*, 420 A.2d at 457. In *Paugh*, the parties agreed, as here, to bifurcate the issues before the arbitration tribunal. *Id.* However, following the first hearing, before the defendant had an opportunity to present evidence, the panel entered an award purporting to dispose of the ultimate issue in the case. *Id.* The defendant failed to object and presented its defenses at a subsequent hearing. *Id.* The arbitrators then considered all the evidence and entered a new award, reaching the same conclusion as they had in the prior award. *Id.* We concluded that "[i]t cannot be maintained in these circumstances that the arbitrators denied [the defendant] a fair hearing."

¶ 13 We interpret *Paugh* to stand for the proposition that a litigant is not denied a fair hearing so long as the arbitrators allow the aggrieved party to complete the record and then enter an award on the basis of all the evidence. Our reasoning establishes, implicitly, that on remand, the arbitration panel has authority to address issues raised in the original submission so long as it did not address those issues prior to entering the premature award. *Id. See also Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 991–92 (3d Cir.1997) ("[W]here the award does not adjudicate an issue which has been submitted, then as to such issue an arbitrator has not exhausted his function and [the issue] remains open to him for subsequent determination[.]"). Sosso, despite her reliance on *Paugh* for support of numerous arguments through her brief, *see* Brief for Appellant at 18–19, fails to address this aspect of the case or to distinguish the court's reasoning. We find *Paugh* controlling.

¶ 14 In this case, the parties agree that the proceedings before the arbitration panel were not complete when the arbitrators entered the first award. As in *Paugh*, additional evidence remained to be presented to establish Sosso's defenses to McKenna's claims. As a consequence of this deficiency, *counsel for Sosso* requested that the panel reconvene to consider that evidence and petitioned the trial court to remand the matter to arbitration. Reproduced Record (R.R.) at 0532. In response to counsel's request and the agreement of the arbitrators, the trial court remanded the matter for further proceedings. R.R. at 0083. The court's order vacated its prior rule to show cause why the arbitration award should not be confirmed and quashed the pending petitions to confirm and to vacate the award. Sosso made no objection to the court's order and, as in *Paugh*, returned to arbitration, where she presented the defenses she considered germane to her case. The arbitrators heard the evidence and entered a new award reaching the same conclusion they had reached previously.

¶ 15 Under these circumstances, we cannot conclude that the arbitration panel's premature entry of the first award acted to deprive Sosso of a hearing or that the hearing she received was unfair. Despite the tribunal's error in rendering an award prematurely, the arbitrators recognized that they had not addressed Sosso's defenses and, *at the insistence of Sosso's counsel,* convened a new hearing, accepted Sosso's evidence, and entered a new award in consideration of that evidence. Because the arbitration panel provided Sosso an opportunity to be heard, we find no legal basis for the *vacatur* she seeks.

■ ¶ 16 In her third and fourth issues, Sosso contends that the court erred, ultimately, in entering judgment on the arbitration award because the arbitrators had been prejudiced. Brief for Appellant at 27–29. Though Sosso couches her argument in terms of trial court error, we conclude that the matter at issue is in fact the purported bias of the arbitrators. We note, however, that Sosso cites no factual basis for her claim. Rather she relies upon the dispositions of other cases in which the reviewing courts remanded the matters at issue for appointment of new arbitrators upon findings that some action of the prior arbitrators had deprived the appellant of a full and fair hearing. *See Smaligo v. Fireman's Fund Ins. Co.*, 432 Pa. 133, 138, 247 A.2d 577, 580 (1968) (concluding that arbitrator's conduct denied Smaligo a full and fair hearing because arbitrator refused to hear testimony on loss of future earnings of plaintiffs' decedent, and delivered grossly insufficient award as a consequence); *Gov't. Employees Ins. Co. [GEICO] v. Lane*, 264 Pa.Super. 615, 401 A.2d 765, 768 (1979) (concluding that arbitration hearing was void *ab initio* because chairmen of arbitration panel had *ex parte* contact with counsel for Lane). We find both cases distinguishable. In this case, unlike *Smaligo*, the arbitrators received all evidence proffered by the parties and fashioned an award based on that evidence. Sosso does not allege that the arbitrators refused to hear evidence germane to her defenses. Consequently, we find her reliance on *Smaligo* misplaced. Sosso's reliance on *GEICO* is similarly misguided. Whereas in *GEICO*, counsel for one of the parties contacted an arbitrator without the knowledge of the other party to question the amount of the award to his client, Sosso fails to aver that any such contact occurred here. Though Sosso asserts that her counsel contacted the arbitrators in writing to demand additional hearings at which she could present her defenses, she does not aver that her counsel's contact was made *ex parte* or that it was improper in any other way. Moreover, she does not aver that McKenna's counsel had improper contact with the arbitrators. Accordingly, we find no parallel in *GEICO* by which to impugn the impartiality of the arbitrators here. Because Sosso has failed to demonstrate, or even to aver, that the arbitrators were, in fact, biased, we cannot conclude that the

trial court erred in reducing the arbitration award to judgment.

¶ 17 Finally, Sosso contends that the trial court erred in "modifying the terms" of the arbitrators' award before entering the judgment. Brief for Appellant at 6. In support of its contention that the court "modified the award," Sosso contends that the court failed to include in the language of the judgment paragraph 10 of the award, which stated: "Nothing in this Award is meant to override the requirements and obligations set forth in the Franchise Agreement between PPR and Prudential Real Estate Affiliates ("PREA")...." Brief for Appellant at 29. All parties contended at oral argument that Judge Strassburger was mistaken in having failed to include this provision in the judgment.

¶ 18 However, Sosso does not contend that in failing to include paragraph 10 in the judgment the court attempted to mold the award or that it vacated any part of the award. Under these circumstances, we fail to discern how the judgment entered by the trial court "modifies the terms" of the award. The respective functions of an award and a judgment are distinct, and the "terms" of the award are not "modified" or changed by the judgment absent explicit direction. *Cf. Keystone Building Corp. v. Lincoln S. & L. Ass'n*, 468 Pa. 85, 92, 360 A.2d 191, 195 (1976) (concluding that final decree could not be given greater scope or effect than prior decree it interpreted). The award disposes of the issues before the arbitration panel, as the parties agreed in their original submission. In this regard we find no distinction between the award and a verdict. Entry of judgment on the award reduces the disposition to an obligation of the losing party enforceable by execution. *Cf. Clinton v. Giles*, 719 A.2d 314, 317 (Pa.Super.1998) (concluding that verdict may be given effect only when judgment is entered). Without directions from the court making an affirmative modification, the judgment does not change the award, as it does not change a verdict. Accordingly, the fact that the judgment entered does not repeat verbatim every phrase of the award does not operate to "modify the terms" of award. *See Keystone*, 468 Pa. at 92, 360 A.2d at 195. *Cf. Catanzaritti v. Bianco*, 131 Pa.Super. 207, 198 A. 806, 810–11 (1938) (concluding that final decree of orphans' court must be interpreted in light of proceedings it concludes). Sosso cites no authority to establish any contrary proposition. Consequently, we cannot conclude Judge Strassburger's failure to include paragraph 10 of the award as part of the judgment constitutes a source of reversible error.

¶ 19 For the foregoing reasons, we affirm the trial court's order confirming the award in arbitration and its decree entering judgment.

¶ 20 Decree entering judgment on award in arbitration **AFFIRMED**.